USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _3/29/2024_

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

**WHITEHEAD,**

                      **Plaintiff,**

        **-against-**

**KIJAKAZI,**

                      **Defendant.**

**1:22-cv-09922- (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Dunashia N. Whitehead ("Plaintiff") brings this action challenging the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision that Plaintiff was neither disabled nor entitled to Supplemental Security Income (SSI) payments under Title II and Title XVI of the Social Security Act. 42 U.S.C. §§ 401-433, 1383. Each party has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). ECF Nos. 8-12. The Court has considered the Parties' submissions, and for the reasons set forth below, Plaintiff's motion is **DENIED** and Defendant's motion is **GRANTED**.

## BACKGROUND

### I.    Procedural Background

On January 28, 2021, Plaintiff filed an application for supplemental security income, alleging disability beginning August 11, 2020 due to epilepsy, anxiety, depression, and panic attacks. Tr. at 20, 222-231[1]. The Social Security Administration (SSA) initially denied her application on July 12, 2021 and then again on August 24, 2021 after reconsideration. *Id.* at *2*0, 107-120, 124-135. On September 1, 2021, Plaintiff requested a hearing before an Administrative

---

[1] "TR" refers to the Certified Administrative Record filed at ECF No. 7. Pagination follows original pagination in the Certified Administrative Record.

Law Judge ("ALJ") *Id. at 2*0, 136-137.  The request was granted and a telephonic hearing took place on December 22, 2021 before ALJ Mark Solomon.  *Id*. at 35-60.  Plaintiff, along with her lawyer, were present at the hearing and Plaintiff, along with vocational expert Tanya Edghill, gave testimony.  *Id.*  ALJ Solomon issued a decision finding Plaintiff not disabled on March 18, 2022.  *Id.* at 17-30.  Plaintiff then requested and was ultimately denied a review of that decision by the Appeals Council of the Office of Disability Adjudication and Review.  *Id.* at 1-14.  The denial of review on September 28, 2022 made the ALJ's decision the final decision of the Commissioner.  *Id.* at *1*-6.

**II.     Factual Background**

**A.  General Medical Background**

Plaintiff was born on May 16, 1998.  *Id.* at 37.  Plaintiff alleges that she suffers from epilepsy, anxiety, depression, and panic attacks.  *Id.* at 222-223.  As a result of these conditions, Plaintiff claims that she cannot travel alone, must have a family member sit with her when she bathes in case she has a seizure, can not sit or stand for long periods of time as she becomes dizzy, has problems with her memory which caused her to misplace things and forget appointments, and has difficulty coping with stress.  *Id.* at 24.  Plaintiff also indicated that she is unable to walk more than "a couple of blocks" before needing to rest.  *Id.*  Plaintiff initially relied on Ubers to travel as taking public transportation triggered her anxiety, but she no longer can afford to take them.  *Id.* at 24-25.  During the relevant time period, Plaintiff's seizures occurred only sporadically, and Plaintiff had not had any seizures for several months prior to the issuance of the ALJ's decision.  *Id.*  While her seizures last approximately a minute, Plaintiff alleges that they left her unaware of her surroundings for about half an hour.  *Id.* at 24, 45.

Plaintiff was reportedly diagnosed with focal epilepsy as a child and was prescribed Tegretol which kept her seizure free for five years. *Id.* at 313-314. She was able to remain off the medication for two years without incident, but her seizures returned in 2018. *Id.* at 314. Plaintiff developed severe fear and anxiety related to her renewed seizures and was hospitalized in June 2020 with suicidal ideation as a result. *Id.* at 25. She was later prescribed several different seizure medications which were unsuccessful at preventing her seizures and came with significant side effects, including insomnia (for which she was prescribed and took Clobazam) and dizziness. *Id.* at 25-26, 45, 525. Plaintiff stopped taking seizure medication in the Fall of 2020. *Id.* at 26.

Despite her symptoms, Plaintiff can prepare simple meals, spend time with loved ones, clean, shop for clothes and art supplies, manage her money, watch TV, knit, and draw sporadically. *Id.* at 24-25. As of the time of the ALJ hearing, Plaintiff had graduated from high school, was attending community college at least until two months before the hearing, and rented a bedroom from her landlord. *Id.* at 41-42, 44-45, 53. Plaintiff complained that she had difficulties interacting with her classmates and teachers and stopped attending college in October 2021. *Id.* at 24, 49-50.

### B. Medical Evidentiary Record

The following section summarizes Plaintiff's medical visits as recounted in the administrative evidentiary record.

As of December 22, 2021, Plaintiff testified that, since January of 2021, she had received treatment for seizures primarily from doctors at Montefiore but had also been to Columbia and Bronxdale medical facilities for treatment.

### i. Mount Sinai Hospital

Plaintiff reported to the emergency department on June 5, 2020, after a month of worsening anxiety and increased fears of having seizures. *Id.* at 25, 327. Plaintiff was first examined by RN Kristen Ibanez who noted that Plaintiff had come for a psychological evaluation after expressing suicidal intentions to her mother, who had accompanied her to the hospital, for over 2 weeks. *Id.* at 326.

Dr. Hannibal Person then treated Plaintiff and diagnosed her with post-traumatic stress disorder ("PTSD"), anxiety and depression. *Id.* at 331. Dr. Pearson found that Plaintiff was goal- and future-oriented despite presenting a risk of self-harm. *Id.* Dr. Pearson noted that Plaintiff was not a candidate for psychiatric hospitalization and discharged her. *Id.* at 331-332.

### ii. Dr. Christopher Elder

Plaintiff then went to Columbia Neurology on January 14, 2021 where Dr. Christopher Elder noted that Plaintiff had a history of seizures due to a birth defect and was diagnosed with focal epilepsy as a child. *Id.* at 25, 346. After a period of seven years without seizures, Plaintiff started experiencing seizures again in 2018. *Id.* Plaintiff reported feeling debilitated and living in fear of having seizures in public. Plaintiff further reported no seizures since September of the previous year and noted having issues with her memory multiple times per week. *Id.* at 346-347. Plaintiff was not taking any medication at that time and had a "normal" examination. *Id.* at 25, 346. Dr. Elder ordered an MRI for Plaintiff and the results were normal. *Id.* at 26, 701.

At a follow-up appointment on May 26, 2021, Plaintiff expressed being amenable to a higher dosage of Clobazam as the dosage she had been taking had not caused any side effects and was improving her sleep. *Id.* at 26, 689.

### iii. Dr. Nicholas Gavin

Dr Gavin treated Plaintiff on March 11, 2021 after Plaintiff reported her fourth seizure since halting her anti-seizure medication in the Fall of 2020 and was prescribed Clobazam. *Id.* at 26, 695.

### iv. Dr. Lohrasb Ahmadian

Plaintiff was treated for a hand lesion on March 29th, 2021. *Id.* at 361. Dr. Ahmadian found Plaintiff to be well-developed, well-nourished, and in no acute distress. *Id.* at 364.

### v. Dr. Andy Liu

Plaintiff attended a telehealth follow-up appointment with Dr. Liu on April 2, 2021. *Id.* at 691. Plaintiff told Dr. Liu that her stomach problems had worsened and complained of becoming dizzy, light-headed and confused prior to her bowel movements. *Id.* Plaintiff also reported weekly abdominal cramping before urgent bowel movements and an unintentional loss of 10 pounds over the course of 4 months. *Id.* Dr. Liu found Plaintiff to be in no acute distress but was unable to make a specific diagnosis as to her stomach issues. *Id.*

### vi. Children's Hospital at Montefiore

Plaintiff was treated for abdominal pain on April 4, 2021. *Id.* at 378. Resident physician Shenel Heisler found that Plaintiff was not in acute distress and appeared well-developed. *Id*. at 380, Plaintiff was discharged, given Ibuprofen and Tylenol, and was told to return if her symptoms worsened. *Id.* at 384.

### vii. Montefiore Comprehensive Family Care Center

Plaintiff was then treated for pelvic pain on April 21, 2021. *Id.* at 467. Nurse Practitioner Lisa L. Marshall noted that Plaintiff was well-developed, well-nourished, and in no acute distress. *Id.* at 473. She was given a ceftriaxone injection, prescribed doxycycline and was

directed to attend follow-up appointments two days and one month following this initial appointment. *Id.* at 474-476. Plaintiff's condition had not changed by her April 23 follow-up, so another appointment was scheduled for three days later. *Id.* at 499-500. Plaintiff indicated that her pain had improved since starting the prescribed medications at her April 26 appointment. *Id.* at 511-521.

Approximately a month later, Plaintiff continued having acute pelvic pain and was advised by medical professionals to report to the emergency room for evaluation and treatment. Plaintiff did so on March 28, 2021 at the Montefiore emergency department. *Id.* at 619-666. Plaintiff was prescribed medication and discharged from the emergency department that same night. *Id.* at 627.

### viii. Clarice Maala Gentolia NP

Plaintiff was again taken to an emergency department on May 8, 2021 after she reported having a seizure the night before. *Id.* at 26, 525. At the visit, Plaintiff stated she had been having seizures once a month since January and was taking Clobazam daily. *Id.* Her physical examination was normal, but her seizures were found to be spontaneous, worsening, and poorly controlled. *Id.* at 525-592.

### ix. Dr. Manuel Paz

Plaintiff underwent an internal medicine examination on June 1, 2021 and reported seizure triggers that included strobe lights, stress, and dehydration. *Id.* at 704. She also was found to be able to cook, clean, do laundry and shop with someone nearby. *Id.* Dr. Paz also found that Plaintiff could shower, bathe and dress independently but could not lift or carry heavy objects stand or walk for prolonged periods, operate motor vehicles, or be exposed to unprotected heights. *Id.* at 704, 706.

### x. Dr. Arlene Rupp-Goolnick

A psychological examination on June 1, 2021 revealed that Plaintiff had engaged in self-harm but had no suicidal ideation. *Id.* at 710. Plaintiff claimed her anxiety in social settings prevented her from going to school. *Id.* at 709-710. Dr. Rupp-Goolnick reported Plaintiff presented with a "somewhat unusual" physical appearance but was well-groomed, able to concentrate, and had intact short-term memory. *Id.* at 710-711. Plaintiff was also found to be able to dress, bathe, groom herself, cook and prepare food, maintain an ordinary routine including regular attendance at work with mild limitation, and had moderate limitations in regulating her emotions, controlling her behavior, and interacting with supervisors, co-workers, and the public. Id. 712. Plaintiff was again diagnosed with panic attacks, generalized anxiety disorder, and PTSD. *Id.* at 27, 708-713.

### xi. June 2021 Voluntary Phsychiatric Admission

#### 1. Dr. Omar Bashayan

Plaintiff went to the psychiatric emergency department on the evening of June 10, 2021 hoping to be admitted because of her panic attacks. *Id.* at 680. Plaintiff claimed her attacks were occurring daily and lasted between five and thirty minutes. *Id.* at 681. Plaintiff was calm, coherent, and cooperative during the exam, but remained apprehensive and anxious. *Id.* Dr. Bashayan found Plaintiff's request for voluntary admission to be appropriate. *Id.*

#### 2. Dr. Ermal Bojdani

Dr. Bojdani re-evaluated Plaintiff the next day and found her to be depressed and have poor energy and psychomotor retardation. *Id.* at 675. Plaintiff remained well-groomed, calm, coherent and apprehensive throughout the examination. *Id.* When asked about starting

antidepressants or anti-anxiety medication, Plaintiff declined to do so. *Id.* Dr. Bojdani also found Plaintiff's request for voluntary admission appropriate. *Id.* at 679.

### 3. Dr. Sophia C Ebel

Plaintiff wanted to leave the hospital the following day, on June 12, 2021, to sort out her affairs. *Id.* at 668. Plaintiff also indicated her willingness to be more honest with her therapist. *Id.* Dr. Ebel did not believe that Plaintiff was an imminent threat to herself and discharged her but suggested continued psychotherapy and medical treatment. *Id.*

### C. Disability Determination Services Evidentiary Record

The following sections summarize the Disability Determination Services' ("DDS") findings as to Plaintiff's claim for disability benefits.

#### i. DDS Medical Consultants

DDS medical consultants found that Plaintiff's sole documented physical limitation was her seizures and that Plaintiff had no exertional limitations, but should avoid unprotected heights and hazardous machinery. *Id.* at 72.

#### ii. DDS Psychological Consultants

DDS psychological consultants found that Plaintiff had no understanding or memory limitation but had moderate limitations in sustaining concentration, persistence, maintaining pace, and in adapting and managing herself, as well as mild limitations in interacting with others. *Id.* at 73-76. Despite these findings, the consultants found that Plaintiff could perform unskilled work. *Id.*

### D. Vocational Expert Testimony

At Plaintiff's administrative hearing on December 12, 2021, Vocational Expert Tanya M. Edghill testified at the ALJ hearing on December 12, 2021. *Id.* at 53-59. There, Edghill testified

that someone like Plaintiff, who would have to avoid heavy machinery and unprotected heights, could have occasional contact with supervisors coworkers and the public, could carry out simple instructions, can adapt to routine changes, and maintain attention and concentration for simple, repetitive, rote work, could still find work. *Id.* at 54. Edghill provided examples of such jobs, which included hand packager, labeler, and document preparer. *Id.* at 55. Edghill further clarified that Plaintiff would be able to take four unscheduled breaks of about eight minutes each in these recommended jobs. *Id.* at 58.

## LEGAL STANDARD

### I. Judicial Review of the Commissioner's Determination

A district court reviews a Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether substantial evidence exists to support the Commissioner's decision and whether the Commissioner applied the correct legal standard. *Talavera v. Astue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is "more than a mere scintilla" and is rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).

A district court may only reject an ALJ's factual findings "if a reasonable factfinder would have to conclude otherwise." *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). Simply put, the court must give the Commissioner's determination considerable deference and may not "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted).

## II. Commissioners Determination of Disability

### A. Definition of Disability

A disability, as defined by the Social Security Act, is one that renders a person unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) *accord* 42 U.S.C. § 1382c(a)(3)(A). Further, "[t]he impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chat er*, 221 F.3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

### B. The Commissioner's Five-Step Analysis of Disability Claims

The Commissioner uses a five-step process to determine whether a claimant has a disability within the meaning of the Social Security Act. *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4). First, the Commissioner determines whether the claimant is employed. *Curry*, 209 F.3d at 122. Second, if the claimant is unemployed, the Commissioner considers whether the claimant has a "severe impairment" that "significantly limits his physical or mental ability to do basic work activities." *Id.* Third, if the claimant suffers from such an impairment, the Commissioner determines whether that impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of the Social Security Act regulations, meaning it conclusively requires a determination of disability. *Id*; *see also* 20 C.F.R., Part 404, Subpart P, App'x 1. If the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual

functional capacity ("RFC") to perform her past work. *Curry*, 209 F.3d at 122. Finally, if the claimant is unable to perform his past work, the Commissioner determines whether there is other work which the claimant could perform. *Id.*

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and 'bears the burden of proving his or her case at steps one through four.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). At step five, however, "the burden shifts to the Commissioner to show that there [are] a significant number of jobs in the national economy that [the claimant] could perform based on his residual functional capacity, age, education, and prior vocational experience." *Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004) (citing 20 C.F.R. § 404.1560).

### III. The ALJ's Decision

ALJ Solomon made the following findings:

(1) Plaintiff had not engaged in substantial gainful activity since January 28, 2021, the date of the submitted application. *Id. at 22*;

(2), Plaintiff has the severe impairment of "seizure disorder, anxiety disorder, and depressive disorder". *Id.*;

(3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 Id. 848.; 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 22-23;

(4) Plaintiff has the residual functional capacity to perform a full range of work at all exertion levels but with a set of limitations, that such work must not involve climbing ropes, ladders or scaffolds, unprotected heights and hazardous machinery and must be simple, repetitive work with at most occasional interpersonal contact with supervisors, coworkers and the general

public. *Id.* at 24;

(5) In consideration of Plaintiff's age, education, work experience and residual functional capacity there are jobs that exist in significant numbers in the national economy that Plaintiff is able to perform. *Id.* at 29.

Based on this assessment, ALJ Solomon determined that Plaintiff is capable of performing a full range of work as a hand packager, labeler, and document preparer and that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from the date of the filing of her application for benefits through the date of the decision. *Id.* at 30.

## DISCUSSION

Plaintiff argues that the ALJ's determination that she could perform the full range of work at all exertional levels was not supported by substantial evidence. Specifically, Plaintiff argues that ALJ Solomon: 1) failed to evaluate the Plaintiffs function by function assessment, 2) failed to evaluate the side effects of her prescribed medication, 3) relied on an inconsistent vocational expert, 4) committed reversible error in failing to evaluate the Plaintiff's mental impairment and resulting functional limitations as required by 20 C.F.R. § 404.1520(a), 5) incorrectly found that Plaintiff can do various kinds of unskilled work, and 6) did not ask the proper hypothetical to the vocational expert.

The Court finds that there was substantial evidence as to each of the ALJ's determinations under the five-step review process and that the ALJ applied the appropriate legal standards.

### I. Step Three

Because there is no dispute as to the validity of the ALJ's findings that Plaintiff did not have gainful employment between January 28, 2021 and the date of the hearing and that Plaintiff

suffered from three severe impairments in satisfaction of steps one and two, the Court's analysis begins with step three. Where a determination of severe impairment is made, an ALJ must next determine whether that impairment meets or is equivalent in severity to a listed mental disorder 20 C.F.R § 416.920a(d)(2). This is done by comparing the applicant's degree of functional limitation and associated medical findings with those statutory impairment criteria corresponding to that same disorder. *See Id.* ("We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder.").

The impairment criteria for depressive disorder and anxiety disorder as codified in the federal regulations require the applicant to suffer from general extreme limitation or from at least two of an enumerated list ("paragraph B") of marked limitations in broad areas of functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12(A)(1-2), 12.04, 12.06. In determining that Plaintiff had failed to meet these criteria, the ALJ considered the fact that Plaintiff previously attended college classes as well as the consultative examination's finding Plaintiff "showed no limitations in memory or concentration and the treatment records showed intact memory and concentration as well." *Tr.* at 23. The ALJ also considered Plaintiff's limited ability to interact with others, but ultimately found this limitation to be a moderate one because given Plaintiff's reports that she was able to get along with authority figures, travel by herself, and travel by bus. *Id.*

The ALJ's determination that Plaintiff exhibited only moderate limitations in concentrating was also supported by the evidentiary record as Plaintiff was noted to have had intact concentration during the consultative examination and intact cognition in the treatment records but could be occasionally distracted by her seizures. *Id.*

Finally, the ALJ's determination as to Plaintiff's moderate limitations in adapting and

managing herself through her anxiety and depression was supported by the evidence that Plaintiff was still being able to perform all activities of daily living so long as they did not require prolonged standing or walking. *Id.*

The ALJ also found that Plaintiff did not meet the requirements for "paragraph C because her "mental disorders do not result in marginal adjustment, or a minimal capacity to adapt to changes in environment or to demands not already part of daily life, despite ongoing treatment". *Id.* at 23.

It is clear from the record that the ALJ applied the "special technique" that the Plaintiff claimed was not used and that upon using that special technique the ALJ determined that Plaintiff's impairments do not rise in severity to a listed mental disorder under 20 C.F.R. §416.920a(d)(2).

## II. Step Four

The ALJ found that Plaintiff had the residual function capacity (RFC) to:

"perform a full range of work at all exertional levels but with the following nonexertional limitations: avoid climbing ropes/ladders or scaffolds, avoid working at unprotected heights or with hazardous machinery, can remember, understand and carry out simple instructions and make simple work related decisions for all SVP level 1 or 2 jobs, can adapt to routine changes in the workplace, maintain attention and concentration for simple repetitive rote work, respond appropriately to supervision, can perform a job with occasional close interpersonal contact with supervisors, coworkers and the general public."

Plaintiff argues in her motion for summary judgement that substantial countervailing evidence existed which would support the conclusion that Plaintiff is incapable of working. *See* ECF No. 9 at pp. 10-11. This argument is unavailing as a legal matter because this Court's review is limited to determining whether there was substantial evidence to support the commissioner's decision, not whether there may have been substantial evidence supporting an alternative conclusion. *See Tibbles v. Comm'r of Soc. Sec.*, 22-1127-cv, 4 (2d Cir. May. 16,

2023) (noting that the court's "review of the denial of disability benefits 'focus[es] on the administrative ruling'") (*quoting Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009))); *Talavera v. Astue*, 697 F.3d 145, 151 (2d Cir. 2012) (reviewing a final decision of the SSA under the limited scope of determining whether the SSA's conclusions were supported by substantial evidence and based on a correct legal standard); *Balsamo v. Chat er*, 142 F.3d 75, 81 (2d Cir. 1998) (noting that "an ALJ is free . . . to choose between properly submitted medical opinions"). Nevertheless, it is apparent from the ALJ's decision that the administrative court considered and specifically addressed many of the facts Plaintiff highlights to this Court as not having been duly considered below. As such, this Court determines that the ALJ's determinations were supported by substantial evidence.

Specifically, as to Plaintiff's physical ailments, the ALJ determined that Plaintiff's view on the intensity, persistence and limiting effects of her alleged impairments was not consistent with the evidence in the record. Tr. at 29. The ALJ stated that the medical records established that Plaintiff had visited the emergency room only twice for her seizures. *Id.* The ALJ also noted that while Plaintiff had stopped taking her seizure medication in late 2020, her seizure disorder improved after taking new medication and that she had not had a seizure in the four months preceding the hearing. *Id.* Despite this, the ALJ did find that Plaintiff's risk of seizures was enough to warrant environmental limitations including the avoidance of jobs with unprotected heights and hazardous machinery. *Id.* The ALJ even considered the side effects of the medication that Plaintiff was prescribed, noting that Plaintiff had denied suffering from side effects from taking Clobazam. *Id.* at 26; *see also id.* at 48. The ALJ also supported these findings through references to the medical evidentiary record by relying on Dr. Paz's opinion that Plaintiff had difficulty balancing, operating heavy machinery, and working at unprotected

heights. *Id.* at 24. The ALJ even went so far as to incorporate those findings into his RFC finding by pegging the decision's work limitations to Dr. Paz's recommendations. *Id.* at 28. The ALJ also considered Dr. Paz's findings that Plaintiff displayed "a normal gait, full squat, full ranges of motion, physiologic and equal deep tendon reflexes, intact sensation, full motor strength, intact hand and finger dexterity, full grip strength, and no evidence of muscle atrophy." *Id.* at 26. Contrary to Plaintiff's arguments, the ALJ was not required to credit her abdominal pain and hand lesions because the evidence showed that Plaintiff did not experience these conditions on a regular or consistent basis. *Id.* at 704.

As to her mental disorder claims, Plaintiff argued in her motion that she does not have the required mental abilities to do even unskilled work due to her documented difficulties with completing work tasks within a time frame, comprehending, remembering, and carrying out complex instructions, interacting with the public, supervisors or coworkers, adapting to routine work settings, and making judgements on complex work-related decisions. ECF No. 9 at 16-18. Despite this, the ALJ found that Plaintiff had the residual function capacity to complete simple tasks in a low stress environment "with only occasional contact with others due to her depression and anxiety" *Id.* at 29. Plaintiff argues before this Court that the ALJ's finding that Plaintiff was only moderately limited in her ability to concentrate, persist, or maintain pace and in her ability to adapt or manage herself was inconsistent with the ALJ's RFC determination that she was able to adapt to routine changes in the workplace and maintain attention and concentration for simple repetitive rote work.

First, this Court finds that the ALJ's determinations were supported by substantial evidence. Specifically, the ALJ relied upon the fact that Plaintiff did not take any psychiatric medication, that Plaintiff's reports of not being able to take public transportation were

inconsistent with the fact that she attended the consultative examination by bus, and that Plaintiff's claims of severe anxiety were belied by her ability to spend time at the nail salon frequently and interact with her teachers while in college. *Id.* The DDS evaluation, which the ALJ relied upon and found substantially persuasive, also noted that Plaintiff's mental disorder limitations were manageable and that the Plaintiff could perform unskilled work. *Id.* at 28.

Second, this Court finds no inconsistency in the ALJ's determinations. Far short of any inconsistency, it is apparent that the ALJ took the moderate limitations which Plaintiff's mental disorders created in crafting the RFC.

As a final matter, Plaintiff's argument in her reply to the government's motion that the ALJ failed to clarify which part of Dr. Rupp-Goolnick's report he found persuasive is insufficient as a matter of law. ECF No. 12 at 1. Plaintiff does not provide any controlling caselaw establishing that the ALJ had any obligation to explain the manner in which the report was used in the construction of the RFC. Plaintiff cites to *Cecilia J. v. Comm'r of Soc. Sec.*, 2021 WL 431673, at *3 (W.D.N.Y., Feb 8, 2021) to argue that a meaningful review of the ALJ's decision is not possible without a clear indication of how such findings were used. ECF 12 at 4. However, *Cecilia J. v. Comm'r of Soc. Sec* specifically took issue only with the "rote analysis" and "conclusory explanations" of the ALJ in that case. Here, by contrast, the ALJ explicitly stated in the RFC that Dr. Rupp-Goolnick's opinion was only partly persuasive because Dr. Rupp-Goolnick's findings that Plaintiff was moderately limited in her ability to regulate her emotions, control her behavior, maintain her well-being, and interact adequately with others involved in the place of work was not entirely consistent with the evidence. *Id.* at 28. The ALJ addressed the inconsistency and stated that, despite this finding, Dr. Rupp-Goolnick's examination was "normal for memory and concentration", and that "[Plaintiff] elsewhere

reported no problems with authority figures and did not indicate problems interacting with others." This was not a "rote analysis" and clearly addresses the issues the ALJ had with the finding, namely that some of Plaintiff's previously mentioned limitations persisted and that the physician's usage of the term "moderate" was too vague for meaningful inclusion in the RFC. As such, this court is not called upon to engage in "guesswork" in the manner discussed in *Cecilia J.*

### III. Step Five

Based upon the testimony of vocational expert Tanya M. Edghill, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 29.

Plaintiff takes issue with a hypothetical the ALJ posed to Edghill during the hearing in which the ALJ asked if there were any unskilled jobs that a young, high school educated, individual could do while avoiding climbing ropes, ladders and scaffold, working at unprotected heights, and handling hazardous machinery. *Id.* at 54. The ALJ further added that the individual would be able to "remember, understand and carry out simple instructions and make some work-related decisions, adapt to routine changes in the workplace, maintain attention and concentration for simple repetitive, rote work . . . respond appropriately to supervision" and have "occasional contact with supervisors, coworkers and the general public." *Id.* Plaintiff argues that the hypothetical was inadequate because it did not reflect all of Plaintiff's limitations. ECF 9 at 18-19. Interestingly though, Plaintiff fails to state precisely what limitations the hypothetical ought to have included. Interestingly still, the Court notes the hypothetical's near mirroring of the final RFC imposed by the ALJ.

Plaintiff's argument is unavailing. Edghill was posed several hypotheticals by Plaintiff's own attorney at the hearing ostensibly in support of Plaintiff's view of the case. *Id.* at 56-57. To so mandate or curtail the ALJ's questioning of witnesses regarding matters for which they are qualified to testify, especially where such questioning is permitted to the claimant, would be unworkable and unduly burdensome.

Plaintiff further claims that Edghill's testimony alleging that Plaintiff could work as a document preparer conflicts with the Dictionary of Occupational titles because the variety of tasks document preparers commonly perform conflicts with Plaintiff's limitation to doing only repetitive work. ECF 9 at 14. Plaintiff's argument is insufficient because the ALJ was required only to provide one job that satisfied the requirement of availability in the national economy and clearly did so. *See* 20 C.F.R. § 416.9669(b); *see also* Tr. at 30 (noting that Plaintiff could also work as a hand packager or a labeler).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for judgment on the pleadings is **DENIED**; Defendant's cross-motion for judgment on the pleadings is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED.**

**Dated: March 29, 2024**
**New York, New York**

                                    **HON. ANDREW L. CARTER, JR.**
                                    **United States District Judge**